**Rudolph De LA ROSA, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 40310.

Court of Criminal Appeals of Texas.

May 3, 1967.

John W. O'Dowd, John Michael Ille, Houston, for appellant.

Carol Vance, Dist. Atty., Richard M. De-Guerin and Gerald Applewhite, Asst. Dist. Attys., Houston, and Leon B. Douglas, State's Atty., Austin, for the State.

## OPINION

ONION, Judge.

Appellant was convicted as a second offender of unlawfully possessing a narcotic drug under the provisions of the Uniform Narcotic Drug Act and his punishment was assessed by the jury at confinement in the Texas Department of Corrections for twelve (12) years.

The trial commenced on October 7, 1965, and concluded the following day prior to the effective date of the 1965 Code of Criminal Procedure. Notice of appeal, however, was given on January 28, 1966, and the provisions of the 1965 Code will control as to appellate procedure. Carter v. State, Tex.Cr.App., 408 S.W.2d 507; Jones v. State, Tex.Cr.App., 406 S.W.2d 451; Ross v. State, Tex.Cr.App., 403 S.W.2d 138; Rivera v. State, Tex.Cr.App., 403 S.W.2d 130.

In his brief filed in the trial court, appellant, in his first ground of error, contends that the trial court erred in allowing the State to fingerprint the appellant in open court, after the State had announced ready, in violation of his privilege against self-incrimination.

■ This contention that he was compelled to give evidence against himself when the State was permitted to introduce fingerprints taken on the morning of his trial in open court in the absence of the jury has been determined adversely to him in Platt v. State, Tex.Cr.App., 402 S.W.2d 898; Dennison v. State, Tex.Cr.App., 399 S.W.2d 365; Gage v. State, Tex.Cr.App., 387 S.W.2d 679. See Holt v. United States, 218 U.S. 245, 31 S.Ct. 2, 54 L.Ed. 1021; 8 Wigmore, Evidence, Sec. 2265 (McNaughton Rev.1961).

In his next ground of error, appellant contends that the trial judge erred in denying him and his attorneys the right to examine each member of the jury panel on voir dire and such action deprived him of a fair and impartial trial by jury, of the right to counsel, as well as the effective assistance of counsel in violation of the Federal and State Constitutions.

The record reflects that prior to the voir dire examination of the jury panel, the Court instructed the attorneys that each side would have thirty minutes to conduct their portion of voir dire examination. To which action of the Court, the appellant vigorously objected in writing, pointing out that thirty-two prospective jurors would have to be qualified before the exercise of peremptory challenges; that such arbitrary limitation would deprive him of asking each prospective juror his name, address, marital status, place of employment, religious and educational background, prior jury service and attitude toward "second offender cases" and certain principles of law. He requested the Court to allow him to propound approximately fifteen questions which he set out in his motion. All such questions appear to be proper voir dire questions. The

objection was overruled and the request denied.

Thereafter, the Court propounded to the jury panel certain principles of law concerning the presumption of innocence, burden of proof, the defendant's failure to take the stand, etc., the law applicable to the trial of criminal cases in general, the responsibility and duties of jurors, and addressed questions to the panel as a whole as to their qualifications. At the conclusion of which two of the members of the panel were excused because of their prejudice arising from the nature of the charge. The State thereafter concluded its individual examination of the thirty-two jurymen in approximately twenty minutes. The appellant propounded certain questions collectively to the jury panel concerning principles of law and while he was questioning the sixteenth juror individually, he was informed by the Court his time was up and he was given five minutes in which to strike his jury list. His request to continue the voir dire examination was denied as was a similar motion renewed after the selection of the jury, but prior to the impaneling. The jury panel was not excused until after the jury list had been struck. The record further reflects that his request to perfect his bill of exception to show what the jurymen's answers would have been and how he had been harmed was denied. His additional request for the same purpose to question those jurors selected, but not yet impaneled, who had not been previously interrogated individually was likewise denied. The record reveals that appellant exercised at least four of his peremptory challenges on prospective jurors that he had not been allowed to question individually, being numbers 20, 22, 28, and 31 on the jury list.

It is abundantly clear from the record that the appellant attempted to perfect his bill of exception at the time all prospective jurors were present, to show that he had exhausted his peremptory challenges and had been forced to take an objectionable juror and was thus harmed, but he was

prevented from doing so by the action of the Court.

A review of appellant's voir dire examination of the prospective jurors reveals no attempt to prolong the voir dire. Not a single objection was addressed to any of his questions, and they do not appear to be irrelevant, immaterial or unnecessarily repetitious. The docket sheet reflects that jury selection began at 2.32 P.M. and concluded at 3:20 P.M.

■ Trial by impartial jury has been considered a bulwark of Anglo-American liberties particularly in criminal cases where it operates as a protection of civil liberties. An impartial jury has been said to be one which favors neither party, which is unprejudiced, disinterested, equitable, and just, and which is composed of jurors who have not pre-judged the merits of the case. See Duncan v. State, 79 Tex.Cr.R. 206, 184 S.W. 195.

■ The voir dire process is designed to insure—to the fullest extent possible—that an intelligent, alert and impartial jury will perform the duty assigned to it by our judicial system.

■ Both Article 1, Sec. 10, Texas Constitution, Vernon's Ann.St., and Article 4 (now 1.05) Vernon's Ann.C.C.P. provide that an accused person shall have the right of being heard by himself or counsel or both. It is well established by numerous decisions of this Court that this constitutional guarantee of the right to be represented by counsel carries with it the right of counsel to interrogate the members of the jury panel to the end that he may form his own conclusion, after his personal contact with the juror, as to whether in counsel's judgment he would be acceptable to him or whether, on the other hand, he should exercise a peremptory challenge to keep him off the jury. Mathis v. State, 167 Tex.Cr.R. 627, 322 S.W.2d 629; Olliff v. State, 161 Tex.Cr.R. 336, 276 S.W.2d 839;

Carlis v. State, 121 Tex.Cr.R. 290, 51 S.W. 2d 729; Pendergrass v. State, 121 Tex.Cr. R. 213, 48 S.W.2d 997; Hirschberg v. State, 108 Tex.Cr.R. 175, 299 S.W. 641; Plair v. State, 102 Tex.Cr.R. 628, 279 S.W. 267; Belcher v. State, 96 Tex.Cr.R. 382, 257 S.W. 1097; Reich v. State, 94 Tex.Cr.R. 449, 251 S.W. 1072; Kerley v. State, 89 Tex.Cr.R. 199, 230 S.W. 163; Barnes v. State, Tex.Cr.App., 88 S.W. 805.

Further in Plair v. State, supra, it was said:

"To prepare himself for the intelligent exercise of the peremptory challenges allowed him by statute, one accused of crime has the right, through his counsel, to direct to the veniremen appropriate questions. See Vernon's Tex.C.C.P. art. 690; Belcher v. State, 96 Tex.Cr.R. 382, 383, 257 S.W. 1097, and precedents cited therein. He has such right also when his questions are framed with the view of challenging for cause. In each instance, it is within the province of the presiding judge to limit and control the examination; and, in so doing, his discretion is broad, but does not embrace the right to deny the privilege of having counsel examine the veniremen. When the effort is to lay a predicate for challenge for cause, the relevancy and materiality of the question propounded and the answer sought is important, in order that the trial court may intelligently rule, and the appellate court review. In ascertaining whether a peremptory challenge is to be used, the inquiry is intended to elicit information upon which the accused or his counsel may determine whether the privilege of arbitrarily excusing the juror shall be exercised. These principles are stated in the cases collated in Belcher v. State, supra; Kerley v. State, supra; also in Reich v. State, 94 Tex.Cr.R. 449, 251 S.W. 1072, and cases therein collated."

The State points out in its brief that there was no limitation placed by the Court

on the type of question to be asked nor was there a refusal of a specific question. Many of the cases cited above did involve such situations. The unrealistic time limitation here imposed had the same effect, however of depriving the appellant of asking the prospective jurors individually proper and pertinent questions.

As we understand the State's position, it is that appellant was not harmed in view of the Court's collective examination of the jury, the State's voir dire examination and the appellant's own collective examination. We cannot agree. In addition to the appellant being denied the opportunity to show harm, this Court in Plair v. State, supra, said,

"We think no case can be found in this state where it has been held permissible for the trial court to refuse to allow counsel to examine the jurors individually as to their qualification. We think the distinction is clear between an examination of this character and the mere asking of jurors the same questions in a group. There is a certain degree of timidity and diffidence about some jurors that would be calculated to cause them to remain silent unless personally called upon to answer any questions."

■ We recognize that it is not only the right but the duty of the trial court to confine the examination of prospective jurors within reasonable limits. If this was not so, some trials would never terminate. Grizzell v. State, 164 Tex.Cr.R. 362, 298 S.W.2d 816. This duty does not carry with it, however, the authority to refuse appellant's counsel the privilege of examining each juror individually within reasonable limits.

In Carter v. State, 100 Tex.Cr.R. 247, 272 S.W. 477, this Court said,

"It is always commendable for a trial court to dispatch business with prompt-

ness and expedition, but this salutary result must never be attained at the risk of denying to a party on trial a substantial right."

■ Given the circumstances of this cause, we conclude that the imposition of the strict time limitation was unreasonable, and that the able and learned trial judge fell into error.

In view of our disposition of this case, we do not deem it necessary to discuss the remaining grounds of error.

The judgment is reversed and cause remanded.

## DISSENTING OPINION

WOODLEY, Presiding Judge.

The question which controls the proper disposition of this case is not whether the court should have allowed more time than 30 minutes but whether the trial court's action in limiting counsel for the state and for appellant to 30 minutes to complete their voir dire examination of the jury panel, following the examination and remarks of the court, requires reversal without any showing (1) that the defendant exhausted his peremptory challenges or (2) that he was required to accept an objectionable juror.

Appellant failed to avail himself of the opportunity afforded him by Art. 40:09 C.C.P. to have his list of peremptory challenges included in the record on appeal, or to show by bill of exception presented pursuant to Art. 36.20 C.C.P. that he exhausted such challenges, or that an objectionable juror served on the jury.

Art. 40.09 C.C.P. provides, in part, that the clerk prepare an appellate record comprising a true copy of the matter designated by the parties.

Section 2 provides:

"Each party may file with the clerk a written designation specifying matter for inclusion in the record. The failure of the clerk to include designated matter will not be ground for complaint on appeal if the designation specifying such matter be not filed with the clerk within sixty days after notice of appeal is given."

Art. 36.20 C.C.P. furnished another means whereby appellant could have shown that he exhausted his challenges or was required to accept an objectionable juror.

So far as this record shows, the jury may have been chosen from the 16 that had been fully examined during the time allowed.

The following authorities support the view of the writer that a showing of injury was necessary in order to obtain reversal.

Ross v. State, 102 Tex.Cr.R. 364, 277 S.W. 667, 668, opinion by Judge Hawkins.

"Bill of exception No. 5 complains of the refusal of the court to permit counsel for appellant to ask the prospective jurors certain questions. It is doubtful if the bill should be considered because of its form, but, if considered, we are of the opinion it presents no error. *It fails to show that any objectionable jurors were forced upon appellant by reason of the court's ruling.*"

35 Tex.Jur.2d, p. 176 (Footnote 17)

"In order that reversal may be predicated on refusal of trial court to permit question to be propounded on voir dire, it is necessary to show that accused was forced to accept objectionable juror because of being required to exercise peremptory challenge to stand aside one who should have been challenged for cause. Williams v. State, Tex.Cr.App., 179 S.W.2d 297."

I respectfully dissent.